MARK POE (S.B. #223714)
mpoe@gawpoe.com
RANDOLPH GAW (S.B. #223718)
rgaw@gawpoe.com
GAW | POE LLP
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

Attorneys for Plaintiffs Trendsettah USA,
Inc. and Trend Settah, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRENDSETTAH USA, INC. and TREND SETTAH, INC. | Case No. 2:14-CV-07956 |
| Plaintiffs, | **COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| SWISHER INTERNATIONAL, INC. | |
| Defendant. | |

Plaintiffs Trendsettah USA, Inc. and Trend Settah, Inc. allege as follows:

## JURISDICTIONAL STATEMENT

1.      The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because some of Plaintiffs' claims arise pursuant to federal law.

2.      The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiffs and Defendant are citizens of different states, and the amount in controversy exceeds $75,000.

3.      The Court has supplemental jurisdiction of Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

1    4.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a

2 substantial part of the events giving rise to the claim, including Plaintiffs'

3 negotiation of its contract with Defendant and its orders for cigarillo products,

4 occurred in this district.  Venue is additionally proper in this district pursuant to 15

5 U.S.C. § 22 because this action arises under the federal antitrust laws and may be

6 brought in any district where Defendant transacts business, and Defendant has and

7 continues to transact business in this district.

8 <div align="center">**INTRODUCTION**</div>

9    5.    This is a case concerning Defendant Swisher International, Inc.'s

10 ("Swisher") efforts to maintain its monopoly of the market for the small cigars

11 known as cigarillos, through taking anti-competitive actions targeting a competitor

12 in the cigarillo market, Plaintiffs Trendsettah USA, Inc. and Trend Settah, Inc.,

13 (collectively, "TSI").  Swisher's actions caused illegal antitrust injury to consumers

14 and to competition in the cigarillo market.

15    6.    TSI entered the cigarillo market by contracting with Swisher to have

16 Swisher exclusively manufacture TSI's cigarillos, which TSI marketed and sold

17 under the brand name "Splitarillo."  Initially, Swisher was happy to receive the

18 profits it earned from TSI as a result of the manufacturing contract.  As the contract

19 progressed, however, TSI's Splitarillo brand began to capture a larger and larger

20 share of the cigarillo market, both within California and nationwide, due to TSI's

21 innovative marketing of the Splitarillo brand and due to the high quality and low

22 cost of the product.

23    7.    As Splitarillo grew, Swisher's view of the company soured.  Swisher

24 decided that rather than compete in the open market with the Splitarillo brand, it

25 could best protect its monopoly by restricting the supply of Splitarillos.

26 Accordingly, Swisher began refusing to fulfill the orders for Splitarillos that TSI

27 placed, or sabotaged such orders, in violation of the contract that it had agreed to,

28 which contained no limit as to the number of cigarillos Swisher would manufacture.

Swisher's refusal to fulfill its contractual obligations caused TSI to be unable to satisfy the burgeoning demand for its product.  By doing so, Swisher restricted the supply of low-cost, high quality cigarillos to the American consumer.  Swisher's actions to inhibit the growth of its competitor TSI caused TSI to suffer millions of dollars of lost profits between the time that those efforts began and the present.

8.    TSI accordingly brings this antitrust action to exonerate the injury caused to the cigarillo market both in California and nationwide, and to recover the damages to its business caused by Swisher's anticompetitive business practices.

**PARTIES**

9.    Plaintiff Trendsettah USA, Inc. is California corporation with its principal place of business in Orange County, California.

10.    Plaintiff Trend Settah, Inc. is a California corporation with its principal place of business in Orange County, California, and is a wholly owned subsidiary of Trendsettah USA, Inc.

11.    Defendant Swisher International, Inc. is a Delaware corporation with its principal place of business in Jacksonville, Florida.  Swisher is the world's largest cigar company, and is widely known for its ubiquitous brand of "Swisher Sweets" cigars and cigarillos.

**FACTUAL ALLEGATIONS**

**A.    TSI's Entry Into the Cigarillo Market and Decision to Contract with Swisher**

12.    In 2010, TSI's founder began contemplating entry into the cigarillo market, in an effort to capture the high profitability margins in that emerging sector of the cigar market.

13.    Through his investigation of that market, TSI's founder came to understand that it includes major barriers to entry, including enormous capital outlays to purchase the specialized machinery necessary for manufacturing cigarillos, and the development of relationships with tobacco growers, all overlaid

COMPLAINT

1    by the fact that the tobacco industry is highly regulated by governmental

2    authorities.

3         14.    In the face of the barriers to starting a cigarillo manufacturing

4    company from scratch, TSI's founder began investigating the possibility of

5    contracting with an existing cigarillo manufacturer to have that company

6    manufacture cigarillos branded under the name "Splitarillo," which was conceived

7    of by TSI's founder.

8         15.    The first company that TSI's founder thought of in this regard was

9    Swisher, which is a household name in the cigar and cigarillo market, particularly

10   through its "Swisher Sweet" brand.

11        16.    Swisher currently holds a dominant nationwide market share for

12   cigarillos, as well as a dominant share of the California market.

13        17.    On information and belief, Swisher manufactures cigarillos for other

14   brands (similar to its arrangement with TSI) and it thereby retains market share and

15   power even beyond the share comprised of its own branded products.

16        18.    TSI's founder first contacted Swisher during the first quarter of 2010,

17   to investigate the possibility of contracting to have Swisher manufacture cigarillos

18   to be sold under the "Splitarillo" name.

19        19.    TSI's founder was put in touch with Paul Arvia, Senior Vice President

20   of Sales for Swisher, Tom Ryan, President of Swisher, Jane Green, Vice President

21   of Marketing of Swisher, and Bill Schoep, Vice President of Sales of Swisher.  Mr.

22   Arvia assured TSI's founder that Swisher was eager to accept payment from TSI in

23   order to manufacture its cigarillo product, and assured TSI's founder that it had

24   sufficient capacity to meet TSI's demand.  TSI sought Swisher to manufacture its

25   cigarillos because of the quality of product and Swisher's manufacturing abilities.

26        20.    Pursuant to those negotiations, TSI entered a two-year contract with

27   Swisher, titled "Private Label Agreement," effective January 20, 2011.  Pursuant to

28   that contract, Swisher agreed to manufacture cigarillos to be sold under the

Splitarillo brand name in exchange for stated prices that varied depending on whether TSI ordered the product as a 60-count box, a 25-count box, or a 3-pack plastic sleeve.

21.     Under the contract, TSI agreed to place orders with Swisher for at least 2,500 cases of Splitarillo branded products each month, and (through TSI or its affiliated distribution companies) to purchase a certain minimum volume of Swisher-branded products each month.  If TSI failed to purchase those minimum volumes, Swisher reserved the right to terminate the contract.

22.     Importantly, Swisher's manufacturing right of the Splitarillo brand was "exclusive," such that TSI was contractually prohibited from using another manufacturer to fulfill its orders for Splitarillo cigar products.  That aspect of the contract permitted Swisher complete control to constrain the output of Splitarillo products, as it saw fit.

**B.     Swisher Takes Action to Maintain Its Monopoly and Injure the Splitarillos Brand**

23.     Within months of its initial launch in the spring of 2011, Splitarillo started to make major inroads in the cigarillos market.  Alarmed at the challenge to their market dominance, Swisher began taking steps to sabotage the growth of Splitarillo.

24.     Beginning in approximately the third quarter of 2012, Swisher began refusing to fulfill TSI's orders for Splitarillos.  By then, the Splitarillo product line had expanded to encompass a number of different flavored cigarillos, ranging from "grape" to "rozay" to "blueberry."  Because the different flavors varied in popularity with American consumers, TSI's customers ordered varying quantities of each.

25.     A frequent tactic that Swisher began employing to limit the sales of Splitarillo products was to refuse to fulfill TSI's orders in the flavors and quantities

COMPLAINT

1    that TSI had ordered, preventing it from satisfying the consumer demand for its

2    products.

3         26.      Swisher easily had the capacity in their manufacturing plants to fulfill

4    TSI's orders, but chose not to do so to limit the growth of Splitarillo.

5         27.      For example, TSI's most popular flavors by far were those known as

6    "OG Sweet," and "Natural."  In an email sent from one of TSI's principals, Akrum

7    Alrahib, to Jane Green, a Swisher Vice President of Marketing, on November 16,

8    2012, TSI complained:

9           "I have over 3,000 case OG sweet 3/99 3pack on back order to wholesalers

10         for quite some time now. . .  I have over 400-500 customers presently and I

11         owe most of them some.  I have stressed how important the OG Sweet and

12         100Natural 3/99's are.  My question is, are we going to start focusing and

13         producing those items?"

14         28.      Ms. Green responded by saying that Swisher would provide only 977

15    cases of Sweet 3-for-99.

16         29.      Two weeks later, on November 30, 2012, Mr. Alrahib again wrote to

17    Ms. Green:

18           "Jane, I'm sending you this purchase order because I am starting to get a lot

19         of complaints from wholesalers across the USA!! . . . The main flavor OG

20         Sweet and the fastest growing 100natural seems to always be out of stock

21         and they will not buy the other flavors without those.  They are threatening

22         and telling us that they are forced to go back to working with Good Times

23         because of our lack of product and lack in timing of products.  Right now the

24         brand and company is in jeopardy because of this main obstacle. . . . Please,

25         it is time to step up and help me get through this time and give the customers

26         that we both depend on for growth in our brands the continuity what they are

27         DEMANDING."

28

           COMPLAINT

Mr. Alrahib closed his email by placing an "emergency order" for 4000 cases of OG Sweets, 2,500 cases of 100 Naturals, and 700 cases of Swag Berry.

30.     A week later, Ms. Green responded, by telling TSI that it would ship 109 cases of OG Sweet, 513 cases of Grape, 5 cases of Rozay, 449 cases of Blueberry, and 672 cases of Natural.

31.     Another tactic that Swisher employed that manifested its intent to preserve its monopoly was by trying to use its supply squeeze as a basis for extracting higher-than-agreed prices from TSI to fulfill the orders Swisher was contractually committed to fulfilling.  For example, in the November 16, 2012 exchange noted above, Ms. Green responded to TSI's complaint about the restricted supply of Splitarillos by opening her email with, "[w]e are happy to produce additional cigars beyond your existing materials at the price of $175.00 per thousand."  The contractual price that Swisher had agreed to, however, was $133.00 per thousand.

32.     Upon the two-year expiration of TSI's initial contract with Swisher, TSI still faced substantial obstacles to manufacturing Splitarillos on its own.  TSI thus agreed to renew the Private Label Agreement with Swisher, effective February 1, 2013.

33.     A key difference between the initial and the new contracts was that rather than requiring TSI to order a *minimum* quantity of Splitarillos each month, the new contract placed a cap on TSI's orders, of 12 million each month, thereby placing a ceiling on the size to which TSI could grow.

34.     Swisher had no contractual discretion to restrict its output of TSI's orders below the 12 million per month ceiling, but it nevertheless consistently failed to fill TSI's orders as it did under the initial contract.

35.     For example, for the month of June 2012, TSI placed orders for thousands of cases of Splitarillo products, but Swisher filled only hundreds of cases

of Splitarillos of certain flavors ordered.  This pattern was repeated each month through the end of the parties' relationship.

36.    TSI also began hearing that, in conjunction with the market growth of Splitarillo, Swisher had begun actively disparaging the Splitarillo product within the industry.

37.    For example, sometime during the second quarter of 2012, employees of a Fresno, California-based distributor called SM Brothers, Inc. were told by Swisher representatives that TSI would no longer be receiving Splitarillos and that TSI was going out of business.

38.    On information and belief, Swisher employees would visit wholesalers and distributors and then physically remove Splitarillo products from their shelves.

39.    On information and belief, also during those visits to wholesalers and distributors, Swisher employees would physically remove Splitarillo marketing and advertising materials as well.

40.    The efforts of Swisher and its employees to harm the Splitarillo brand in the industry were intended to limit and reverse the growth of the brand, for the anticompetitive purpose of maintaining Swisher's monopoly in the cigarillo market.

//

//

//

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

41.     Swisher's efforts caused TSI to lose sales, and reduced the rate of market share growth that TSI had previously experienced.  Swisher's conduct was the sole cause of TSI having the sales history reflected in the below graph:



42.     At the end of September 2013, Swisher sent TSI a letter notifying it that Swisher would not renew the manufacturing contract for 2014.

43.     After Swisher announced it would not renew its manufacturing contract with TSI, TSI employees paid a visit to Swisher's manufacturing plants in the Dominican Republic that produced the cigarillo products.  Those TSI employees witnessed, and received confirmation from Swisher's employees on-site, that Swisher had tremendous capacity to produce cigarillos.  Based on their experience and knowledge of cigarillo manufacturing, these TSI employees knew that Swisher was fully able to satisfy all of TSI's product orders but deliberately chose not to do so to constrain the growth of the Splitarillo brand.

44.     Swisher's anticompetitive conduct can be summarized as follows:  In a product market with exceedingly high barriers to entry, it signed up a promising competitor for a manufacturing contract by which Swisher could control the competitor's output.  As the competitor expended capital to establish itself and tried

COMPLAINT

1   to develop a good reputation in the market, Swisher began taking affirmative steps

2   to maintain its monopoly by refusing to fulfill its manufacturing obligations, and by

3   committing a variety of business torts against the competitor.  This pattern of

4   conduct was designed to quash competition by doing just enough to help a fledgling

5   company get off the ground, and then crush it, with Swisher's expectation that it

6   would be harder for a failed company to grow into an effective competitor than it

7   would have been otherwise—had the new company built its business from scratch

8   rather than being under Swisher's thumb.

9      45.    On information and belief, and as discovery is expected to show,

10   Swisher has repeated this same pattern of behavior against other prospective

11   competitors in the cigarillo market, thereby causing further injury to competition

12   and to the American consumer.

13   <center>**FIRST CLAIM FOR RELIEF**
**(Sherman Act, 15 U.S.C § 2)**</center>

14

15      46.    Plaintiffs hereby incorporate and re-allege paragraphs 1-45.

16      47.    Section 2 of the Sherman Act makes it unlawful to monopolize, or

17   attempt to monopolize, any part of the trade or commerce among the states.

18      48.    As alleged in the foregoing paragraphs, Swisher violated Section 2 of

19   the Act by possessing monopoly power in the cigarillo market both within

20   California and nationwide, and by willfully maintaining that monopoly through

21   restricting the output of its competitor TSI.

22      49.    To the extent that Swisher did not in fact have monopoly power in the

23   California and/or nationwide market, it nonetheless engaged in anticompetitive

24   conduct with the specific intent to achieve a monopoly, and its actions present a

25   dangerous probability of achieving that power.

26      50.    Swisher has exercised its monopoly power in the cigarillo market to

27   injure competition, through its anticompetitive conduct directed at TSI.  On

28   information and belief, Swisher benefits from its monopoly power by its ability to

COMPLAINT

charge prices for cigarillos that are far above its marginal cost of producing the product.

51.     On information and belief, Swisher's use of its monopoly power has allowed it to charge supracompetitive prices that yielded a materially higher profit margin on the cigarillos it sells to American consumers.  It is able to maintain these supracompetitive prices by restricting the output of its competitors, as alleged herein with respect to TSI.

52.     Due to the high barriers to entry and high capital costs in the cigarillo market, existing competitors are unable to increase their output in the short run to make a significant dent in the supracompetitive prices that Swisher charges.

53.     Further evidence of Swisher's anticompetitive intent is seen in the fact that in its first contract with TSI (which Swisher drafted), it secured for itself the exclusive right to manufacture cigarillos for TSI.  By doing so, Swisher prevented TSI from seeking other companies to manufacture its product as Swisher began restricting the output of Splitarillos.

54.     Swisher further violated Section 2 by its refusal to deal with TSI to manufacture Splitarillos after January 2014.  That refusal was intended to maintain Swisher's monopoly, and caused further injury to both TSI and to competition generally given the scarce alternatives faced by TSI for finding a party capable of manufacturing high quality cigarillos.

55.     Swisher further violated Section 2 by committing a variety of business torts against the Splitarillo brand like those at issue in *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002).  As alleged above, those actions include but are not limited to having its employees (1) falsely telling wholesalers and distributors that TSI would no longer be receiving Splitarillos and that TSI was going out of business, (2) physically removing Splitarillo products from shelves and (3) physically removing Splitarillo marketing and advertising materials.

**SECOND CLAIM FOR RELIEF**
**(Florida Antitrust Law, Fl. Stat. § 542.19)**

56.     Plaintiffs hereby incorporate and re-allege paragraphs 1-55.

57.     Florida Statute section 542.19 makes it unlawful to monopolize, or attempt to monopolize any part of trade or commerce in Florida.

58.     As alleged in the foregoing paragraphs, Swisher violated Section 542.19 by possessing monopoly power in the cigarillo market both within Florida and nationwide, and by willfully maintaining that monopoly through restricting the output of its competitor TSI.

59.     Swisher's actions have caused injury to both TSI and to competition within the state of Florida.

**THIRD CLAIM FOR RELIEF**
**(Breach of Contract)**

60.     Plaintiffs hereby incorporate and re-allege paragraphs 1-59.

61.     Swisher was obligated under the Private Label Agreements to fulfill TSI's orders for Splitarillo products.

62.     Swisher breached the Private Label Agreements by refusing to fulfill TSI's orders for Splitarillo products that it had contractually agreed to produce.

63.     TSI fully performed under both contracts.

64.     TSI has been damaged by Swisher's breaches of the contracts.  TSI has lost millions of dollars in profits because it could not satisfy the outstanding demand for Splitarillo products due to Swisher's refusal to fulfill TSI's orders.

65.     Swisher was fully aware that TSI would suffer lost profits because it knew that TSI was ordering Splitarillo products for re-sell to wholesalers, distributors and retailers.

66.     TSI has also suffered a diminution of its value because its economic growth dramatically slowed once its customers realized that TSI would be unable to fulfill demand, and those customers instead permanently turned to other cigarillo alternatives that copied the Splitarillo product.

1

2

**FOURTH CLAIM FOR RELIEF**
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

3

67.     Plaintiffs hereby incorporate and re-allege paragraphs 1-66.

4

68.     All contracts governed by Florida law include an implied covenant of

5

good faith and fair dealing. The covenant is intended to protect the reasonable

6

expectations of the contracting parties in light of their express agreement.

7

69.     Swisher interfered with TSI's right to receive the benefits of the

8

Private Label Agreements.

9

70.     TSI has been damaged by Swisher's conduct.

10

**FIFTH CLAIM FOR RELIEF**
**(Trade Libel)**

11

71.     Plaintiffs hereby incorporate and re-allege paragraphs 1-70.

12

72.     Swisher made express statements of fact, and also expressions of

13

opinion that implied statements of fact, disparaging the quality of the Splitarillo

14

brand or falsely claiming that TSI would discontinue the Splitarillo brand.

15

73.     Swisher made these statements to wholesalers and distributors that

16

purchased Splitarillos, such as SM Brothers, Inc.

17

74.     Swisher knew that such statements were untrue or acted with reckless

18

disregard of the truth or falsity of these statements.

19

75.     Swisher knew, or should have recognized, that these wholesalers and

20

distributors might act in reliance on these statements causing TSI financial loss.

21

76.     TSI suffered direct financial harm because wholesalers and distributors

22

acted in reliance on these statements and reduced their orders of Splitarillos or

23

ceased ordering altogether.

24

77.     Swisher's conduct was a substantial factor in causing TSI's harm.  TSI

25

has lost millions of dollars in lost profits from reduced or lost orders and has

26

experienced a diminution of its value because its economic growth dramatically

27

slowed once its customers permanently turned to other cigarillo alternatives that

28

copied the Splitarillo product.

COMPLAINT

## SIXTH CLAIM FOR RELIEF
### (Tortious Interference With Contract)

78.     Plaintiffs hereby incorporate and re-allege paragraphs 1-77.

79.     TSI had contracts with Pitco Foods, Import Warehouse, Inc., Colonial Grocers, Inc., McLane Company, Inc. and Core-Mark International, Inc. where those third parties placed orders of Splitarillo-branded cigarillos with TSI.

80.     Swisher knew about the existence of these contracts.

81.     TSI purposefully limited their production of Splitarillo-branded cigarillos so that TSI could not fulfill the orders placed by these third parties.

82.     By engaging in this conduct, Swisher intended to disrupt the contracts between TSI and these third parties, or knew that such disruption was substantially certain to occur.

83.     TSI was harmed by Swisher's wrongful conduct.  TSI lost millions of dollars in lost profits from reduced or lost orders and has experienced a diminution of its value because its economic growth dramatically slowed once its customers permanently turned to other cigarillo alternatives that copied the Splitarillo product.

84.     Swisher's conduct was a substantial factor in causing TSI's harm.

## SEVENTH CLAIM FOR RELIEF
### (Intentional Interference With Prospective Economic Relations)

85.     Plaintiffs hereby incorporate and re-allege paragraphs 1-84.

86.     TSI and Pitco Foods, Import Warehouse, Inc., Colonial Grocers, Inc., McLane Company, Inc. and Core-Mark International, Inc. were in an economic relationship that probably would have resulted in an economic benefit to TSI.

87.     Swisher knew about the existence of these relationships.

88.     Swisher engaged in wrongful conduct by limiting their production of Splitarillos-branded cigarillos in restraint of trade.

89.     Swisher engaged in wrongful conduct by disparaging Splitarillos products to these third parties.

COMPLAINT

90.     By engaging in this conduct, Swisher intended to disrupt the relationship between TSI and these third parties or knew that such disruption was substantially certain to occur.

91.     TSI was harmed by Swisher's wrongful conduct.

92.     Swisher's conduct was a substantial factor in causing TSI's harm.

## EIGHTH CLAIM FOR RELIEF
### (Negligent Interference With Prospective Economic Relations)

93.     Plaintiffs hereby incorporate and re-allege paragraphs 1-92.

94.     Swisher knew of the economic relationships between TSI and Pitco Foods, Import Warehouse, Inc., Colonial Grocers, Inc., McLane Company, Inc. and Core-Mark International, Inc. that probably would have resulted in an economic benefit to TSI.

95.     Swisher knew or should have known that these relationships would be disrupted if it failed to act with reasonable care.

96.     Swisher failed to act with reasonable care.

## NINTH CLAIM FOR RELIEF
### (California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200)

97.     Plaintiffs hereby incorporate and re-allege paragraphs 1-96.

98.     Swisher's actions violate the Sherman Act and therefore constitute unlawful conduct within the meaning of California's unfair competition law, section 17200 et. seq. (the "UCL").

99.     Swisher's conduct alleged herein also constitutes an unfair business practice under the UCL in that it violates the public policy of the antitrust laws, is substantially injurious to consumers, its harm outweighs it utility, and consumers could not have reasonably avoided the harm that has flowed from that conduct.

100.    TSI has lost money as a result of Swisher's conduct described herein and is thus entitled to restitution under California's unfair competition law for the amounts paid by it to Swisher under the Private Label Agreements.

COMPLAINT

## <u>PRAYER</u>

**WHEREFORE**, Plaintiffs Trendsettah USA, Inc. and Trend Settah, Inc. pray for judgment as follows:

1.    For judgment against Defendant Swisher International, Inc.;

2.    For compensatory and treble damages;

3.    For consequential damages;

4.    For punitive damages;

5.    For restitution;

6.    For a permanent injunction against the illegal conduct alleged herein;

7.    For attorneys' fees;

8.    For costs; and

9.    For such other and further relief as the Court deems just and proper.


Dated:  October 14, 2014        GAW | POE LLP


By: _____
        Randolph Gaw
        Attorneys for Plaintiffs
        Trendsettah USA, Inc. and Trend
        Settah, Inc.

COMPLAINT

1    Plaintiffs Trendsettah USA, Inc. and Trend Settah, Inc. hereby demand a jury

2    trial for their claims against Defendant Swisher International, Inc.

3

4        Dated:  October 14, 2014              GAW | POE LLP

5

6                                              By: _____

7                                                  Randolph Gaw
                                                   Attorneys for Trendsettah USA,
8                                                  Inc. and Trend Settah, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT